Michelle R. Matheson #019568
**MATHESON & MATHESON, P.L.C.**
15300 North 90th Street
Suite 550
Scottsdale, Arizona 85260
(480) 889-8951
mmatheson@mathesonlegal.com
Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shaun Smith; | Case No.: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Payson Concrete and Materials, Inc., an Arizona corporation, Tony and Jane Doe McDaniel, husband and wife, Merlin Kempfer, M.D. and Jane Doe Kempfer, husband and wife, US Compliance Consortium, Inc., an Arizona corporation; | (Defamation; Negligence) Jury Trial Demanded |
| Defendants. | |

Plaintiff Shaun Smith ("Mr. Smith" or "Plaintiff"), by and through his undersigned counsel, for his Complaint against Defendants, and each of them, states and alleges as follows:

## **INTRODUCTION**

1. This case arises out of Defendants' improper and negligent drug testing procedures, resulting in a presumed U.S. Department of Transportation ("DOT") false-positive drug test result for Plaintiff that ultimately resulted in his employment termination.

2. This case further arises out of Defendant Payson Concrete and Materials, Inc.'s ("Payson Concrete") improper and defamatory reporting of that drug test result to Plaintiff's prospective employers as Plaintiff having failed a random DOT drug test.

## PARTIES, JURISDICTION, AND VENUE

3. Plaintiff Shaun Smith is an individual residing in the state of Colorado. For purposes of diversity jurisdiction, Plaintiff is a resident of Colorado.

4. Mr. Smith is a former transport driver for Defendant Payson Concrete.

5. Payson Concrete is an Arizona corporation located and doing regular business at 1900 E. Hwy 260, Payson, AZ 85441. For purposes of diversity jurisdiction, Payson Concrete is a resident of Arizona.

6. Payson Concrete is an employer subject to the DOT's oversight and DOT agency regulations.

7. Upon information and belief, Defendant Tony McDaniel and Jane Doe McDaniel are husband and wife acting for the benefit of their marital community and reside in Gila County, Arizona. For purposes of diversity jurisdiction, Mr. and Mrs. McDaniel are residents of Arizona.

8. Mr. McDaniel is the head of safety for Payson Concrete, and is also the collector of Mr. Smith's at-issue urine sample.

9. Upon information and belief, Defendant Merlin Kempfer, M.D. and Jane Doe Kempfer are husband and wife acting for the benefit of their marital community and reside in Maricopa County, Arizona. For purposes of diversity jurisdiction, Dr. Kempfer and his spouse are residents of Arizona

10. Dr. Kempfer works and is an agent for US Compliance Consortium, Inc. ("USCCI").

11. Dr. Kempfer is a Medical Review Officer ("MRO") who reviewed and verified Mr. Smith's at-issue urine sample.

12. USCCI is an Arizona Corporation doing regular business at 3102 E. Greenway Road in Phoenix, AZ 85032. For purposes of diversity jurisdiction, USCCI is a resident of Arizona

13. USCCI is an employer's consortium formed for the purpose of complying with the DOT's drug and alcohol testing requirements.

14. The amount in controversy based on Plaintiff's claims exceeds $75,000.

15. This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1332(a)(1).

16. Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b) because the events that gave rise to this Complaint occurred in this district.

## FACTS COMMON TO ALL COUNTS

17. Plaintiff began working for Payson Concrete as a transport driver in 2006.

18. Throughout his employment, Mr. Smith had a spotless driving and disciplinary history.

19. Prior to the incident at issue, Mr. Smith had been subjected to approximately over one hundred, random DOT urinalysis tests spanning his 30 year driving career. All of his prior tests were negative for any prohibited substances.

20. On February 11, 2015, Mr. Smith notified his direct supervisor, Clayton Randall, that one of the automatic self-adjusting brakes on his trailer was locked due to a malfunction. This jeopardized the safety of operating the trailer.

21. The following day, George Randall, the owner and president of Payson Concrete, directed Mr. Smith to use the trailer to transport heavy equipment, although the brake mechanisms had not been repaired.

22. Mr. Smith informed George Randall that it was unlawful to use a commercial vehicle with equipment defects on an Arizona public highway and refused to use the defective equipment unless George Randall personally signed the daily vehicle inspection report, required by DOT regulations, and indicated that he was requiring Mr. Smith to use the trailer in its current state.

23. George Randall grew angry and would not sign the report.

3

24. Mr. Smith approached Tony McDaniel, Payson Concrete's head of safety, regarding George Randall's directive and informed Mr. McDaniel of his intention to call the DOT and report the incident in the event that Mr. Randall persisted in requiring him to use the trailer.

25. Mr. Smith also expressed his concern that Payson Concrete would terminate his employment for refusing Mr. Randall's request.

26. Mr. Smith's (1) refusal to use the defective trailer, and (2) his statements that he would file a complaint with the DOT, constitute protected conduct under 49 U.S.C. § 31105(a)(1)(A)(ii), (B)(i), and (B)(ii).

27. On February 16, 2015, five days after Mr. Smith refused to transport the equipment and trailer in question, Mr. McDaniel arrived at Mr. Smith's home accusing Mr. Smith of being under the influence of illegal drugs and demanding that Mr. Smith provide a urine sample for a drug test.

28. Prior to giving Mr. Smith the drug test, Mr. McDaniel wrongfully insisted that Mr. Smith was using drugs, apparently and suspiciously believing that it was a foregone conclusion that Mr. Smith would fail the test.

29. Mr. McDaniel claimed that the requested test was pursuant to a random DOT notification. However, (1) Mr. McDaniel's comments, that he suspected Mr. Smith of drug use, and (2) the close temporal proximity between Mr. Smith's protected conduct and the test, suggest otherwise.

30. DOT Testing of an employee not at random violates 49 C.F.R. § 382.305.

31. Mr. McDaniel failed to follow the DOT regulations in the collection of the urine sample.

32. Rather than using Payson Concrete's usual testing location, Mr. McDaniel collected Mr. Smith's urine specimen in the bathroom of Mr. Smith's home. *See* Exhibit 1, Medtox Federal Drug Testing Custody and Control Form, identifying Shaun Smith's home address as the collection site address. This violates 49 C.F.R. § 40.41.

33. Mr. McDaniel dated the tamper evidence seals before he entered Mr. Smith's house and began the collection process outside the presence of Mr. Smith, in violation of 49 C.F.R. § 40.71.

34. Mr. McDaniel also did not allow Mr. Smith to witness him sealing the bottles containing the specimen or placing them in the collection bag; steps the collector is required to perform in the employee's presence. 49 C.F.R. § 40.73.

35. Further, after Mr. McDaniel took the sample, he instructed Mr. Smith not to return to work until Payson Concrete received the test results. This violates 49 C.F.R. § 40.21.

36. Upon information and belief, Mr. McDaniel also improperly left the urine sample in his truck for approximately one day, prior to sending it to the lab.

37. Mr. McDaniel, a former law enforcement official, knew or should have known of the defects with the drug test, calling into question its validity.

38. The verification process for Mr. Smith's drug test was similarly flawed.

39. Dr. Kempfer performed the verification process.

40. On February 19, 2015, Dr. Kempfer informed Mr. Smith via telephone that Mr. Smith had tested positive for amphetamine.

41. During the call, Dr. Kempfer began, but failed to complete, the medical interview required for verification as he failed to gather, completely, the list of medications that Mr. Smith was taking. This violates 49 C.F.R. § 40.141(a).

42. Dr. Kempfer's failure to gather Mr. Smith's medication list was crucial as Mr. Smith, at the time of the urine test, had pneumonia and was taking a variety of medications designed to address his symptoms and to help clear his lungs.

43. Dr. Kempfer also failed to notify Mr. Smith of Mr. Smith's right to split sample testing, which violates Mr. Smith's rights and the DOT regulations. *See* 49 C.F.R. § 40.153.

44. Further, neither Dr. Kempfer nor Mr. McDaniel provided Mr. Smith with a list of substance abuse professionals, which is required after a positive test result. *See* 49 C.F.R. § 40.287. While Mr. Smith did not need substance abuse help, this failure interfered with Mr. Smith's ability to complete the process necessary to return to work as a result of this allegedly positive test result.

45. Payson Concrete's, Mr. McDaniel's, and Dr. Kempfer's misconduct and failure to follow the DOT regulations fell below the standard of care required in collecting, storing, verifying, and communicating regarding Mr. Smith's urine sample and drug test.

46. Upon information and belief, Payson Concrete's, Mr. McDaniel's, and Dr. Kempfer's above-described negligence ultimately resulted in a false-positive test result for the urine sample in question.

47. Because Mr. Smith suspected foul play and that Payson Concrete had an improper motive in connection with the drug test, Mr. Smith decided to subject himself to an independent drug test so that he could compare the results.

48. On February 18, 2015, Mr. Smith went to a laboratory collection center of Quest Diagnostics so that a urine test could be performed in compliance with the DOT regulations. *See* Exhibit 2.

49. The results of that test were completely negative for any prohibited substance.

50. This result, along with the gross deficiencies in the collection of Mr. Smith's urine sample and the drug testing, indicates that the February 16, 2015 drug test was likely a false-positive and/or was otherwise invalid.

51. Nevertheless, on February 20, 2015, Payson Concrete terminated Plaintiff.

52. Payson Concrete's stated reason for terminating Plaintiff was the positive DOT drug test result.

53. However, based on Payson Concrete's knowledge of the flawed testing procedures and conditions, Payson Concrete knew or should have known that its February 16, 2015 drug test of Plaintiff was flawed and likely false or invalid, and that it failed to comply with applicable DOT regulations.

54. Upon information and belief, Payson Concrete's actual reason for terminating Plaintiff was in retaliation for Plaintiff's (1) refusal to drive the defective trailer and (2) his statement that he intended to report the incident to appropriate government authorities.

55. Payson Concrete's termination of Plaintiff violates 49 U.S.C. § 31105.

56. Thereafter, Plaintiff applied and was selected for a job with JBS Carriers.

57. He began orientation for the job but was dismissed after JBS Carriers contacted Payson Concrete for a reference.

58. Payson Concrete had informed JBS Carriers that Plaintiff failed a DOT urinalysis test, despite the fact that Payson Concrete knew or should have known that the subject test did not meet DOT regulations and was likely false or invalid.

59. As a result of Payson Concrete's actions, Plaintiff lost the job with JBS Carriers.

60. Upon information and belief, Payson Concrete has published this false and defamatory information to Plaintiff's other, potential employers.

61. In addition to constituting defamation, Payson Concrete's disclosure of Plaintiff's drug test results violates 49 C.F.R. § 40.321, which prohibits employers from releasing information about an employee's drug test without the employee's written consent.

62. A few weeks after being terminated, Mr. Smith informed Payson Concrete via Clayton Randall of his belief that the February 16, 2015 drug test was illegal.

63. He also called the number he had for Dr. Kempfer and requested a copy of his February 16, 2015 test results.

64. Another USCCI agent returned Mr. Smith's phone call. She refused to provide Mr. Smith with a copy of the results, and instructed Mr. Smith to request those from Payson Concrete. Dr. Kempfer and USCCI's conduct, in this regard, violated 49 C.F.R. § 40.329(a) (MRO must provide copies of test results).

65. Mr. Smith then requested a copy of his test results from Payson Concrete.

66. Payson Concrete initially failed to provide those records as required by 49 C.F.R. § 382.405(b).

67. On August 11, 2015, Plaintiff, via counsel, filed a Complaint with the U.S. Department of Labor, Occupational Health and Safety Administration, as required by 49 USC § 31105(b), regarding the above-described conduct and violations of DOT regulations. *See* Exhibit 3.

68. As of the date of filing this Complaint, the Department of Labor has not issued a final decision on its investigation into the above described conduct.

69. The Department of Labor's failure to issue a decision is not due to any bad faith or conduct of Mr. Smith.

## **COUNT I (Defamation – Payson Concrete)**

70. Plaintiff incorporates Paragraphs 1 - 69 of this Complaint as if fully set forth herein for this Paragraph 70.

71. As more fully described above, Payson Concrete's statements to JBS Carriers, that Plaintiff had failed a DOT urinalysis test, were false and defamatory.

72. At the time Payson Concrete made those statements, Payson Concrete knew or should have known that the subject test result was likely a false-positive and/or was invalid, and therefore knew that its statements were false and/or acted in reckless disregard of the truth or falsity of such statements.

73. Upon information and belief, Payson Concrete has published this false and defamatory information to Plaintiff's other, potential employers.

8

74. Since Payson Concrete's statements affected Mr. Smith's trade or business, the statements are also *per se* defamatory under Arizona law. *Modlaw v. Parker*, 17 Ariz. App. 54 (1972) (defamatory statement prejudicing an individual's business, trade, or profession is defamation *per se*).

75. Mr. Smith's reputation and career have been damaged as a result of Payson Concrete's false and defamatory statements.

76. Mr. Smith has also suffered compensatory damages in the form of lost past and future earnings from the Payson Concrete, and lost future earnings from other employment.

## COUNT II (Negligence – all Defendants)

77. Plaintiff incorporates Paragraphs 1 - 76 of this Complaint as if fully set forth herein for this Paragraph 77.

78. Payson Concrete owed a duty to Mr. Smith in its, and its agents, collection and testing of Mr. Smith's urine sample.

79. As an employer subject to DOT's oversight, Payson Concrete is responsible for all actions of its officials, representatives, and agents (including service agents) in carrying out the requirements of the DOT agency regulations. *Spiker v. Sanjivan PLLC*, No. CV-13-00334-PHX-GMS, 2013 U.S. Dist. LEXIS 131985, at *22 (D. Ariz. Sept. 16, 2013).

80. As a collector, Mr. McDaniel also owed a duty of care independently to Mr. Smith in preparing, storing, and collecting Mr. Smith's specimen. *Id.* at **33-34.

81. Further, Dr. Merlin Kempfer was also required to exercise reasonable care in verifying, testing, and confirming the sample, as well as in communicating with Mr. Smith. *Id.* at *38.

82. USCCI, as Dr. Kempfer's employer, is also responsible for Dr. Kempfer's and its other agents conduct in connection with the defective verification process and failure to release Mr. Smith's test results.

83. As more fully described above, Defendants breached their duty to Mr. Smith in, among other things, the collection, storing, testing, and verifying of Mr. Smith's urine sample.

84. Defendants' violations of DOT regulations confirm that their misconduct fell below the applicable standard of care.

85. Defendants' negligence was the proximate and actual cause of Mr. Smith's invalid or false drug test result, his lost job with Payson Concrete, and/or his lost jobs with future employers.

86. This resulted in lost wages, past and present.

**COUNT III (Wrongful Discharge – Payson Concrete)**

87. Plaintiff incorporates Paragraphs 1 - 86 of this Complaint as if fully set forth herein for this Paragraph 87.

88. Under the Arizona Employment Protection Act, an employee may not be discharged in retaliation for (i) refusing to commit an act that would violate an Arizona statute or (ii) disclosing that he has information (or a reasonable belief) that the employer has violated, is violating, or will violate an Arizona statute or constitutional provision. Ariz. Rev. Stat. § 23-1501(3)(c)(i) and (ii).

89. As described in more detail above, Mr. Smith refused to use a commercial vehicle with equipment defects on an Arizona public highway, which is a violation of Arizona law including A.R.S. § 28-891, and disclosed same to his superiors as well as the fact that George Randall requested he perform such an act, which act would be in violation of Arizona law.

90. As a result of Plaintiff's protected disclosures and revelations, and in retaliation for same, Payson Concrete singled Plaintiff out for an invalid drug test and terminated him.

91. Payson Concrete would not have taken these adverse employment actions against Plaintiff but for Plaintiff's protected and lawful conduct.

92. As a result of Payson Concrete's retaliation against Plaintiff, Plaintiff lost past and future wages.

WHEREFORE, for the foregoing reasons, Plaintiff prays for relief against Defendants as follows:

    a. For compensatory damages in the form of lost past and future income;

    b. For damages against Payson Concrete for ruining Mr. Smith's reputation and career;

    c. For punitive damages; and

    d. For such further relief as this Court deems just and proper.

DATED this 16th day of February 2016.

**MATHESON & MATHESON, P.L.C.**

By: /s Michelle R. Matheson
      Michelle R. Matheson, #019568
      *Attorney for Plaintiff*